**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**TRANS OCEAN EXPORT PACKING,
INC., and DeWayne F. Titus,
Respondents.**

No. 23823.

United States Court of Appeals,
Ninth Circuit.

Jan. 2, 1973.

Rehearing Denied March 16, 1973.

Peter A. Eveleth, Atty. (argued), Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Ralph E. Kennedy, Director, Region 21, NLRB, Los Angeles, Cal., for petitioner.

Gordon W. Nelson, Hayward, Cal. (argued), Don Laniewski, Los Angeles, Cal. (argued), W. James Knowles, Santa Monica, Cal., Margolis & McTernan, Los Angeles, Cal., for respondents.

Before HAMLEY, DUNIWAY and TRASK, Circuit Judges.

HAMLEY, Circuit Judge:

On August 30, 1968, the National Labor Relations Board (Board) issued its cease and desist order in an unfair labor practice proceeding against Trans Ocean Export Packing, Inc. (Company). Among other things, the Board order required the Company to make whole thirteen warehouse employees whom the Company had laid off to discourage sup-

port for a union. In order to implement this provision, the order required that the Company, its officers, agents, successors and assigns:

"Preserve and make available to the Board or its agents, upon request, for examination and copying, all payroll records, social security payment records, time cards, personnel records and reports, and all other records necessary or useful to determine the amounts of backpay due under the terms of this Board order."

The Company failed to comply with these provisions of the Board order, and the Board applied to this court for enforcement of that order. On February 27, 1969, we entered a judgment enforcing the Board order.[1] The Company did not comply with our order and accordingly the Board filed its petition for an adjudication in civil contempt.

We subsequently permitted the Board to amend this petition to add DeWayne F. Titus, then president and sole stockholder of the Company, as an additional respondent. The petition was also amended to add allegations to the effect that Titus is responsible for the failure of the Company to comply with our order of February 27, 1969.

After respondents answered, argument was had before this court. At this time it developed that there were unresolved issues of fact concerning respondents' awareness of the terms of our judgment of February 27, 1969, and the ability of respondents to comply with the provision of our order requiring the Company to make available to the Board or its agents, for examination and copying, payroll and other records needed in determining the amount of backpay due under the terms of the Board order of August 30, 1968. Accordingly, we appointed The Honorable Philip J. La Macchia, a hearing examiner attached to the United States Civil Service Commission, as Special Master to take testimony and receive evidence with respect to the issues raised by the pleadings, and to report thereon, including recommended findings of fact and conclusions of law.

After proceedings before him the Special Master filed his report and recommendations on August 9, 1972. The Special Master recommended detailed findings of fact, the substance of which is that respondents were fully aware of the terms of our judgment of February 27, 1969, that Titus was responsible for the failure of the Company to provide the Board with the required payroll and other records and that respondents were fully able to comply with our judgment requiring them to turn over these records for examination and copying.

In the course of his report, the Special Master recommended findings to the effect that, in his effort to frustrate compliance with our judgment, Titus had arranged to stage a fake burglary of the Company's office, and a fake theft of the records in question, but in fact the Company, at all times material to this proceeding, had these records under its custody and control. Pursuant to the terms of our order appointing a Special Master, respondents filed objections to the report, and a brief in support of their objections. The Board filed a brief in support of the report. The Board later requested further oral argument but we have determined to deny this request.

In their objections to the Special Master's report, respondents raise four questions. The first of these is whether the Company and Titus had notice of the February 27, 1969, judgment of this court.

At the time of the enforcement proceedings W. James Knowles was the attorney for the Company. He testified that he received a copy of the court judgment of February 27, 1969. Respondents concede that if one accepts Knowles' testimony "one is forced to the

---

1. This judgment was actually filed on February 19, 1969, but the attested copies sent to the parties unaccountably gave the date of filing as February 27, 1969. We accordingly use the latter date herein.

conclusion that TRANS OCEAN EX-PORT PACKING had notice thereof." But they assert that it was not proved that Titus received such notice. In support of this position, respondents point to the testimony of Knowles that this court's judgment was called to the attention "of either Mr. Titus, directly, or Mr. Watson, at one point." Calling attention to the "or" used by Knowles in this testimony, respondents assert that this testimony is too equivocal to establish that Titus had notice.

But in the very next breath, in his testimony, Knowles stated: "And they [the court judgment and other papers] were subsequently discussed between myself and Mr. Titus on other occasions." Moreover, Knowles' testimony concerning his conferences with Titus from time to time regarding the Board's efforts to secure compliance with the court order, and describing Titus' various efforts to frustrate compliance, warrant the inference that Titus was fully informed concerning the court judgment.

We approve and accept the Special Master's recommended finding that both respondents, at all times material, were fully aware of the terms of our judgment entered on February 27, 1969.

As a second objection, respondents raise the question of whether they had the ability to comply with the provision of the court judgment pertaining to the turning over of payroll and other records to the Board for examination and copying.

The Special Master made meticulous recommended findings concerning respondents' control and custody of the Company's records. These recommended findings led the Special Master to conclude that respondents did have such custody and control at all times material to this proceeding. Respondents do not call attention to any evidence which would justify a contrary conclusion. Instead, they advance a number of collateral issues which we now notice.

■ Respondents assert that neither the petition nor amended petition alleges that either respondent had the ability to comply with the provisions of the court judgment pertaining to corporate records. In support of the contention that such allegations are essential, respondents refer to the California law on the subject, as announced in Farnham v. Superior Court, 188 Cal.App.2d 451, 10 Cal.Rptr. 615 (1961).

We conclude that the Board's failure to make this allegation is not fatal to the petition. First, the Company's contention that Rule 69(a), Fed.R.Civ.P., requires application of California procedural requirements is incorrect.

■ Rule 69 is entitled "Execution," and the first two sentences of paragraph (a) of that rule, upon which respondents rely, read:

"(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on the execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable."

This rule has no applicability here as it relates only to procedures on execution of a district court money judgment. While the Board order of August 30, 1968, required the Company to make whole certain employees for lost wages, no money judgment was entered and the employees are not parties to the proceedings.

In the instant proceeding the Board is merely seeking to require respondents, through the compulsion of a civil contempt proceeding, to turn over books and records as mandated by our judgment of February 27, 1969. We agree with the Special Master's observation that

"to analogize proceedings to enforce an order of the Board to vindicate na-

tiònal policy under a Federal statute to proceedings for enforcement of a mere debt demonstrates a serious misunderstanding of the law. Fleming v. Warshawski [sic] Co., 123 F.2d 622, 625 (1941)."

■ Second, although inability to comply with a judicial decree constitutes a defense to a charge of civil contempt, United States v. Bryan, 339 U.S. 323, 330–331, 70 S.Ct. 724, 94 L.Ed. 884 (1950), the federal rule is that one petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply. United States v. Fleischman, 339 U.S. 349, 362–363, 70 S.Ct. 739, 94 L.Ed. 906 (1950); Cutting v. Van Fleet, 252 F. 100, 102 (9th Cir. 1918). The contrary burden is upon the respondent. To satisfy this burden the respondent must show "categorically and in detail" why he is unable to comply. In re Byrd Coal Co., Inc., 83 F.2d 256 (2d Cir. 1936). Since the Board did not have the burden of proof as to respondents' ability to comply, it was under no obligation to allege such ability in its petitions to this court.

■ The second collateral attack respondents make upon the Special Master's recommended findings concerning respondents' ability to comply is that the Board's amended petition is not verified. Respondents refer to N.L.R.B. v. Arcade-Sunshine Co., Inc., 74 U.S.App.D.C. 361, 122 F.2d 964, 965 (1941), where the court said that it was sufficient if such a petition is verified by the Board on information and belief.

In their objections filed in this court to the Board's motion for leave to file an amended petition, neither respondent called attention to the lack of verification of the amended petition. They accordingly waived this defect and may not assert it now.

The only attack respondents make upon the merits of the recommended finding as to respondents' ability to comply is the assertion, in effect, that the Board failed to prove such ability beyond a reasonable doubt. As we have indicated above, the burden of proof as to this was not upon the Board, but the contrary burden was upon respondents. Respondents failed to carry this burden.

As their third objection to the Special Master's report, respondents raise the question of whether the amendment to the Board's original petition, to add Titus as a respondent, was timely.

■ On April 24, 1969, the Board filed its original petition for an adjudication that the Company is in civil contempt. The Company filed its answer on June 11, 1970. On December 7, 1970, the Board filed its motion to amend its petition to add Titus as a respondent. In his objections to this motion Titus made no argument to the effect that the amendment was not timely, and therefore waived that objection. But in its objection to the Board's motion, the Company asserted that the motion was not timely. Since the prime effect of the amendment to the petition is to add Titus as a respondent, it is difficult to perceive how the Company is aggrieved by the amendment or the time at which it was filed.[2]

■■ The Board's motion to amend its petition was granted subject to reconsideration when the matter was heard on the merits. We now hold that there was no undue delay by the Board. As explained by the Board in its motion, it was not until it had an opportunity to investigate the allegations set forth in the Company's answer to the original Board petition that the Board came to realize that Titus had personally prevented, and was continuing to prevent, compliance with the court judgment. It may be added that the Company cites no

---

2. The Company is hardly in a position to complain because the inclusion of Titus as an additional respondent has delayed completion of the proceedings. Titus is the sole owner of the Company and most of the delay since inclusion of him as a respondent has been due to his own dilatory tactics.

authority to the effect that a delay in moving to file such an amendment requires that leave to file be denied. Permission to file such an amendment lies within the discretion of this court. See 1A, Barron & Holtzoff, Federal Practice and Procedure, § 446 (C. Wright Ed. 1960). In our discretion we allowed the amendment and we believe this exercise of discretion was sound.

As their fourth objection, respondents raise the question of whether the nature of this contempt proceeding is civil or criminal. Respondents' purpose in arguing that the proceeding is criminal in nature is to provide a basis for their claim that in requiring the Company to answer interrogatories, and in requiring Titus to testify by deposition and before the Special Master, respondents were deprived of their Fifth Amendment privilege against self-incrimination. In making this argument respondents urge that California law governs and so they also invoke the privilege against self-incrimination guaranteed by Article 1, section 13 of the Constitution of the State of California.

Respondents' contention that this is in the nature of a criminal proceeding is based upon the following two propositions: (1) under Rule 69(a), Fed.R. Civ.P., California law governs, and (2) under California law a contempt proceeding is always criminal in nature.

■ As noted earlier in this opinion, Rule 69(a) does not require that California law be applied in this case. Under federal law proceedings such as this to secure compliance with court judgments are not criminal, but are civil in nature. Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); N. L. R. B. v. Carlisle Lumber Co., 108 F.2d 188, 189 (9th Cir. 1939).

■ While respondents do not make the point, the law is settled that the privilege against self-incrimination can be claimed in any proceeding, whether criminal or civil, administrative or judicial, investigatory or adjudicatory. In re Gault, 387 U.S. 1, 47–48, 87 S.Ct.

1428, 18 L.Ed.2d 527 (1967). But where such a claim is made in a case other than a criminal prosecution of the person claiming the privilege, the claim may be rejected if, under the circumstances, the witness may not reasonably apprehend that the disclosures he is called upon to make could be used against him in a criminal prosecution or could lead to other evidence that might be so used. See Murphy v. Waterfront Commission, 378 U.S. 52, 94, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (White, J., concurring).

■ Neither before the Special Master nor in this court has Titus suggested how the disclosures he was called upon to make could be used against him in a criminal prosecution or as leads to other evidence that might be so used. He is not threatened with a criminal prosecution for anything he has so far done or failed to do, but only with civil contempt sanctions in an effort to obtain compliance with a court judgment.

Moreover, Titus overlooks the fact that the Special Master's critical recommended findings of fact are not based upon Titus' disclosure, but upon other evidence of record. It follows that if all of Titus' testimony by deposition or otherwise were to be stricken on self-incrimination or any other grounds, this would not affect the evidentiary support for the recommended findings.

■ Insofar as the Company is concerned, the privilege against self-incrimination does not apply. See United States v. Kordel, 397 U.S. 1, 7–8, n. 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); Hyster Co. v. United States, 338 F.2d 183, 187 (9th Cir. 1964).

■ We approve and fully accept as our own the recommended findings of the Special Master. We conclude therefrom that at all material times respondents have had notice of the terms of our judgment of February 27, 1969, and have failed and refused to comply therewith, notwithstanding the fact that they had, and now have, the ability to comply

fully with paragraph 2(c) thereof, reading as follows:

"(c) Preserve and make available to the Board or its agents, upon request, for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all other records necessary or useful to determine the amounts of backpay due under the terms of this Judgment."

We also conclude that respondent DeWayne F. Titus has at all material times exercised dominant control over the management of the Company's affairs and was, and is, responsible for the failure to comply with the above-quoted decretal provision of our judgment of February 27, 1969. We further conclude that Titus has failed and refused to deal in good faith with the Board's Regional Office in its effort to effect compliance, and has directed the Company and its agents to make fraudulent representations to that office regarding the Company's ability to comply.

We therefore determine that the Company and Titus have been and continue to be in civil contempt of this court by reason of their failure and refusal to comply with paragraph 2(c) of our judgment of February 27, 1969.

Respondents may purge themselves of this contempt by taking the following action:

1. Preserve and forthwith make available to the Board or its agents for examination and copying, all payroll records, social security payment records, time cards, personnel records and reports, and all other records necessary or useful to determine the amounts of backpay due under the terms of the agreement.

2. Make whole the thirteen named discriminatees in accordance with the Trial Examiner's Decision of June 5, 1968, and the Board Order of August 30, 1968, after supplemental proceedings have been held by the Board to fix the amounts due the discriminatees, subject to review by this court, including the question of respondents' financial ability to pay such amounts.

3. Pay to the Board all costs and expenses of this proceeding, including counsel fees, incurred by the Board in the investigation, preparation, presentation and final disposition of this proceeding, after the court has determined such costs and expenses upon the basis of a verified statement thereof to be filed by the Board and after considering any objections, including any representations respondents may make concerning their financial ability to pay such costs and expenses, filed by respondents within twenty days after such statement has been filed.

In addition to the above items of positive action respondents shall, in order to purge themselves of the civil contempt determined against them, hereafter refrain from taking any action designed to, or having the effect of, financially disabling them from performing the acts described in paragraphs 2 and 3 above.

Should respondents, or either of them, fail to purge themselves of their civil contempt, as herein adjudicated, by taking the affirmative actions specified above, and refraining from other action as specified above, the Board shall call such fact to the attention of the court and shall submit a form of order for consideration by the court providing for personal attachment against Titus and any other officers and agents of the Company responsible for such noncompliance, and for the imposition of substantial daily fines to remain in effect until full compliance has been achieved.