**Thomas and Carol O'LEARY, et al.**

v.

**MOYER'S LANDFILL, INC., et al.**

**Civ. A. No. 80–3489.**

United States District Court,
E. D. Pennsylvania.

March 5, 1982.

---

Moyer ("defendants") in contempt of my Orders of June 10, 1981 and August 27, 1981.[2] Hearings were held on October 30, November 3, 5 and 11, 1981, and written submissions followed. The following constitutes my findings of fact and conclusions of law on plaintiffs' petitions.

At the hearings' outset, defendants conceded, by stipulation, that they are not in substantial compliance with my June and August, 1981 orders. Defendants stipulated that leachate has been hauled away from the landfill on an irregular basis (N.T. I. 14; G–13 to G–18),[3] that there have been no substantial remedial measures taken other than the irregular hauling of leachate (N.T. I. 14; G–13 to G–18), and that on a number of occasions leachate was discharging and leaving the boundaries of the landfill (N.T. I. 20–21; G–16, G–17). Defendants, then, do not contest that they are in violation of my June 10 and August 27, 1981 orders. Rather, they rely on the defense of financial impossibility.

Joseph M. Donley, Kittredge, Kaufman & Donley, John R. Embick, Kenneth Gelburd, Pa. Dept. of Environmental Resources, Philadelphia, Pa., for plaintiffs.

Bradford F. Whitman, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Private plaintiffs and plaintiff Commonwealth of Pennsylvania, Department of Environmental Resources ("DER"),[1] have petitioned this court to find defendants Moyer's Landfill, Inc., Grange Environmental Corporation, Howard Moyer, Jr. and Catherine

## I.

The law is well-settled that financial impossibility is a valid defense to charges of civil contempt; it is equally well-settled that the burden of proof rests with the alleged contemnor to show his or her financial incapacity to comply with a court's order. *N.L.R.B. v. Trans-Ocean Export Packing, Inc.,* 473 F.2d 612, 616 (9th Cir. 1973). To satisfy their burden of proof, defendants, having raised this defense, must show "categorically and in detail" why they are unable to comply. *N.L.R.B. v. Trans-Ocean Export Packing, Inc., supra,* at 616, quoting *In Re Byrd Coal Co., Inc.,* 83 F.2d 256 (2d Cir. 1936). Under Pennsylvania law, upon which my August 27, 1981

---

1. I shall refer to private plaintiffs and plaintiff DER collectively as "plaintiffs."

2. Upon the representation of counsel for defendant Paul Lanigan that Mr. Lanigan would file with the court a supersedeas bond in the amount of $75,000, I granted Mr. Lanigan, at the beginning of hearings on plaintiffs' petitions, a stay of contempt proceedings against him as a party respondent for the duration of

his appeals from my June 10 and August 27, 1981 orders. Mr. Lanigan's bond was filed on December 7, 1981.

3. "N.T. I." refers to the hearing on October 30, 1981; "N.T. II." to the hearing on November 3, 1981; "N.T. III." to the hearing on November 5, 1981; and "N.T. IV." to the hearing on November 11, 1981.

order is grounded, the defense of financial incapacity is available to one who shows that all reasonable avenues for raising funds have been explored and "exhausted." *Ramey Borough v. Commonwealth, DER,* 466 Pa. 45, 351 A.2d 613, 616 (1976). Finally, a party claiming impossibility is under a continuing duty to comply as means become available. *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *Brotherhood of Locomotive Firemen and Engineers v. Bangor & Aroostook R. Co.,* 380 F.2d 570 (D.C.Cir.1967); *Commonwealth, DER v. Pennsylvania Power Co.,* 12 Pa.Cmwlth. 212, 316 A.2d 96 (1974) aff'd 461 Pa. 675, 337 A.2d 823 (1975).

## II.

Because defendants stipulated to their non-compliance with the court's orders, hearings were limited to defendants' presentation of proof of their defense of financial impossibility. After careful consideration of the evidence and the parties' submissions, I have determined that defendants have failed to meet their respective burdens of showing that, from the dates of my June and August decrees to the time of the hearings, they were financially incapacitated from meeting their obligations under those decrees.

### A. *Defendant Moyer's Landfill, Inc.*

■ Moyer's Landfill, Inc. ("Landfill")[4] provided no audited financial statement for the corporation in support of its defense of financial impossibility. (N.T. I. 25). Instead, it produced a compilation statement (D–49) for the corporation dated July 10, 1981 and prepared by Mr. Ralph Falconiero. Mr. Falconiero has served as Howard and Catherine Moyer's accountant and as accountant for Grange Environmental Corporation and for Hy-Vue Farms, Inc., a corporation of which Mr. Moyer is sole shareholder; but he has never been Landfill's regular

accountant and never audited the corporation (N.T. I. 24). Mr. Falconiero testified that Landfill's compilation statement was based solely on information provided by management—i.e., information provided to Mr. Falconiero by Mr. Moyer (N.T. I. 30; D–49). Mr. Falconiero undertook no independent confirmation of any assets or liabilities of the corporation, and he could not say that the financial statement which he prepared was correct (N.T. I. 30).

In the absence of an audited financial statement for Landfill, I find that it is impossible to make a reliable determination of the funds potentially available to that defendant, and I cannot conclude that it was financially incapacitated from making a greater contribution toward compliance with the June and August decrees than it has mustered thus far.

### B. *Grange Environmental Corporation*

Mr. Moyer is the president and sole shareholder of Grange Environmental Corporation ("Grange Environmental") (N.T. II. 46). He testified that Grange Environmental was formed as part of a process whereby a Donald Nielson would purchase Moyer's Landfill, Inc., but Mr. Moyer also testified that there existed no written agreement between Mr. Moyer or any of his enterprises and Donald Nielson regarding this planned purchase (N.T. II. 46, 80–82). Like Landfill, Grange Environmental produced no audited financial statement, but instead submitted into evidence a compilation statement prepared by Mr. Falconiero from information provided solely by Mr. Moyer (N.T. I. 39, 83; D–53).

Although it has yet to pay Mr. and Mrs. Moyer their consideration in the transaction, Grange Environmental on March 31, 1981 purchased the landfill property from the Moyers for $10,000. (N.T. I. 39, D–53, P–137). Indeed, Grange Environmental's

---

4. Mr. Moyer is president of Moyer's Landfill, Inc., and he and Mrs. Moyer are its principal shareholders. Until April, 1981, the Moyers were also owners of the landfill property. *See infra* at 220–221. From 1976 through September 1980, the concern paid a rent to Mr.

Moyer of $13,000. per month (N.T. II. 76–77, N.T. III. 20–22, 31, 65, 74). From 1974 to 1976 and from 1978 to 1980, Mr. Moyer also received, as a share of income rather than for services rendered, a salary from Landfill of $700. per week (N.T. II. 77; N.T. III. 21).

compilation statement lists the landfill as its sole asset (D–53).

I find defendants' failure to produce an appraiser's valuation of the landfill property to be a serious infirmity in their case. I find it so partly because the landfill property is encumbered by a two million dollar mortgage[5] to Providence Builders, Inc.[6] (N.T. I. 52; D–53A). The mortgage apparently was created, in part, to finance an agreement whereby Moyer's Landfill, Inc. undertook to purchase from Providence Builders, Inc. a property named Troop Farm for three million dollars (D–63).[7] This agreement has proved to be a somewhat spectral transaction. No money has been paid under the agreement; however, the seller, Providence Builders, Inc. has neither voided the agreement, nor declared a default, nor filed any legal action pursuant to the terms of the agreement (N.T. III. 70; D–63). Mr. Moyer testified that the Troop Farm purchase agreement and the two million dollar mortgage attending it were undertaken, in part, in order to provide Providence Builders, Inc. and Mr. Nielson with some assurance that they would be compensated for soil removed from Troop Farm by Landfill (N.T. II. 48). However, Mr. Moyer also testified that he did not know how much soil has been removed (N.T. II. 48), and that he has made no attempt to determine the amount or value of the soil (N.T. II. 84). It appears that Mr. Moyer might have considered, and might still consider, seeking to void the Troop Farm purchase agreement and to modify, at the least, his mortgage with Providence Builders, Inc. to reflect the actual amount which the landfill enterprise is in arrears to Troop Farm. Were these undertakings successful, then the landfill property itself might become a basis to raise needed funds to comply with the court's remedial decrees.

**C.** *Howard and Catherine Moyer*

With regard to Howard and Catherine Moyer, I find that the following infirmities in the defendants' evidence, in addition to infirmities already mentioned, compel the conclusion that they have not proven financial incapacity.

Mr. Moyer is the sole shareholder of Hy-Vue Farms, Inc. ("Hy-Vue Farms"). Mr. Falconiero, Hy-Vue Farms' accountant, prepared a compilation statement of the enterprise which was submitted into evidence, but no audited financial statement was produced. (N.T. I. 48–49, 60; D–56). Nor was an appraiser's valuation of Hy-Vue Farms' real property submitted. Mr. Moyer has placed Hy-Vue Farms' real property on the market, and in place of an appraiser's valuation of that property he submitted his asking price, $219,000. In the absence of an audit, I have no reliable means of determining what further funds Mr. Moyer could have raised, and could raise still, by liquidating other assets of this ill-starred concern. These various uncertainties regarding the worth of the concern are particularly significant inasmuch as one potential source of funds for compliance by Mr. Moyer is a note for $1.5 million dollars payable by Hy-Vue Farms to him. (N.T. I. 47; D–56).

In the absence of an appraiser's valuation, I, likewise, have no reliable basis on which to determine the value of the Moyers' Luzerne County property which they purchased in 1971 for $21,500 and which is now under agreement of sale for the purchase price of $20,000 to a long-standing friend of Mr. Moyer (N.T. III. 43).

III.

In light of the evidence adduced at the hearings on this matter, and defendants' failure to make out their defense of financial impossibility in opposition to plaintiffs'

---

**5.** This mortgage does not appear on Grange Environmental's compilation statement (D–53).

**6.** Providence Builders, Inc. is a corporation of which the aforementioned Donald Nielson is a principal shareholder.

**7.** The Troop Farm property is contiguous with the landfill property (D–63, Exhibit "A").

222

petitions for contempt, I find the defendants to be in contempt of my orders of June 10 and August 27, 1981, and I have decided upon the following sanctions. By an order accompanying this memorandum, I have ordered defendants to pay a fine of $10,000. Seven thousand five hundred ($7,500) dollars of that fine will be earmarked for paying the cost of conducting a full financial audit of Moyer's Landfill, Inc., Grange Environmental Corporation, and Hy-Vue Farms, Inc. and for the cost of appraising the values of all real properties belonging to Howard and/or Catherine Moyer. Two thousand five hundred ($2,500) dollars of the fine will be earmarked for paying reasonable costs and attorney's fees incurred by private plaintiffs in prosecuting this contempt proceeding.

ORDER

1. For the reasons set forth in the accompanying memorandum, defendants Moyer's Landfill, Inc., Grange Environmental Corporation, Howard Moyer, Jr. and Catherine Moyer ("defendants") are hereby found to be in contempt of my orders of June 10, 1981 and August 27, 1981.

2. As sanction for contempt, defendants are hereby ORDERED to pay to the court a fine of $10,000.

3. Until a further order from this court directs otherwise, the fine will be kept in an account by the Clerk of Court.

4. Seven thousand five hundred ($7,500) dollars of the fine, or any smaller portion as may prove sufficient, will be earmarked for the purpose of paying the cost of conducting a full financial audit of Moyer's Landfill, Inc., Grange Environmental Corporation and Hy-Vue Farms, Inc. and for the cost of appraising the values of all real properties belonging to Howard and/or Catherine Moyer.

5. Two thousand five hundred ($2,500) dollars of the fine or any smaller portion as may prove sufficient will be earmarked for

1. Any part of the $10,000 which may prove to be in excess of what is required for the auditing and appraising, or for paying private plaintiffs' reasonable costs and attorney fees, shall be

paying reasonable costs and attorney's fees incurred by private plaintiffs in prosecuting this contempt proceeding.[1]

6. Counsel for private plaintiffs shall submit a petition for costs and attorney's fees within twenty days of this order.

retained in the account herein created and committed to remedial activities at the landfill pursuant to further order of the court.