Francis J. **LOFTUS,** Plaintiff,

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, et al., Defendants.**

**Civil Action No. 93–2471.**

United States District Court, E.D. Pennsylvania.

June 19, 1998.

H. Francis De Lone, Jr., Wayne, PA, for Francis J. Loftus, Plaintiff.

Nicholas J. Staffieri, Septa Legal Div., Philadelphia, PA, for Southeastern Pennsylvania Transportation Authority.

Robert W. Kosman, Brodie, Techner, Rubinsky & Ford, Philadelphia, PA, for Transport Workers Union of Philadelphia, Local 234, Transport Workers Union of America/AFL–CIO, Defendants.

*ORDER–MEMORANDUM*

EDUARDO C. ROBRENO, District Judge.

AND NOW, this **19th** day of **June, 1998,** upon the Order of June 5, 1998, issuing a Rule to Show Cause why counsel for plaintiff, H. Francis deLone, Jr., Esq., should not be held in contempt for failure to comply with the Court's Order of May 8, 1998 and after a hearing on the record, it is hereby **ORDERED** that H. Francis deLone is **ADJUDGED IN CIVIL CONTEMPT.**

It is **FURTHER ORDERED** that H. Francis deLone, Jr. shall pay to the Court $100 per day for each day that he does not pay the sanctions, or does not satisfy the condition of a stay if one is entered by the Court, and shall pay attorney fees and costs incurred by defendants in connection with their motions to have Mr. deLone held in contempt within 10 days. This Order is based upon the following findings:

1. On May 8, 1998 the Court issued an Order requiring Mr. deLone to pay $4,000 in attorney fees to the defendants in this case for pursuing the instant lawsuit after it became clear during the course of litigation that the lawsuit was frivolous.[1]

2. On May 20, 1998, two days before the last day provided for in the order for payment, Mr. deLone filed a notice of appeal as well as a motion to stay the proceedings. He did not request that his motion to stay the proceedings be handled in an expedited fashion.

3. By Order dated May 21, 1998, a hearing on the motion to stay the proceedings was scheduled for June 5, 1998. Mr. deLone was informed by the May 21, 1998 Order that the filing of a motion for a stay did not relieve him from complying with the terms of the Court's Order imposing sanctions.[2]

4. The June 5, 1998 hearing on the motion to stay the proceedings was continued to June 9, 1998 based on a request by counsel for defendant SEPTA. Mr. deLone had no objection to the matter being rescheduled.

5. In the meantime, Mr. deLone did not pay the $4,000 as required by the May 8, 1998 Order. On June 3, 1998, defendants SEPTA and Local 234 filed motions to hold Mr. deLone in civil contempt for failing to pay each of them $2,000 as ordered.

6. On June 5, 1998, the Court issued a Rule to Show Cause Order why Mr. deLone should not be held in contempt, and scheduled a hearing for June 9, 1998, the same date as the hearing on the motion to stay the proceedings.

7. On June 9, 1998, at the hearing, Mr. deLone advised the Court that he was not prepared to address the Rule to Show Cause Order because he had not received the Order as a result of moving his offices. When questioned on the issue, Mr. deLone claimed that he had filed a notice of change of address with the Court. Although the Court was unable to locate any record indicating that Mr. deLone indeed filed a notice of change of address prior to the Court issuing the Order of June 5, 1998,[3] the Court agreed to continue the Rule to Show Cause Hearing. The Court scheduled the continued hearing for June 19, 1998.

8. In the interest of judicial economy, the Court declined to rule on Mr. deLone's motion to stay the proceedings until the Court addressed the contempt issue on June 19, 1998.

9. On June 17, 1998, Mr. deLone filed a notice of appeal seeking a stay of the district court proceedings from the Court of Appeals.

10. On June 19, 1998, the Court held a hearing on both the Rule to Show Cause

---

1. The court found the defendants had incurred approximately $23,000 in attorney fees. However, in the exercise of discretion, the Court reduced the amount of the sanction to $4,000, payable $2,000 to each defendant.

2. A footnote to the May 21, 1998 Order stated: Mr. deLone's motion should more appropriately be styled a motion for return of funds paid pending appeal. Until a stay is granted by the

Court, Mr. deLone is bound by the terms of the Court's Order dated May 7, 1998, and therefore, the Court presumes the sanction placed upon Mr. deLone has been satisfied. (citation omitted).

3. The docket indicates that Mr. deLone filed a change of address notice on June 8, 1998, three days *after* the Court issued a notice of hearing.

Order and the motion for stay the proceedings. Mr. deLone was afforded an opportunity to present evidence and argument on his motion to stay the proceedings and the Rule to Show Cause Order. He was also afforded an opportunity to present evidence regarding his claim that he is unable to pay the sanction.

11. "The purpose of civil contempt is primarily remedial and to benefit the complainant. Civil contempt sanctions are designed either to compensate the injured party or to coerce the defendant into complying with the court's order." *Roe v. Operation Rescue,* 919 F.2d 857, 868 (3d Cir.1990).

■ 12. To hold a party in civil contempt, the complainant must establish three elements by clear and convincing evidence: (a) that a valid court order existed; (b) that the [alleged contemnor] had knowledge of the order; and (c) that the [alleged contemnor] disobeyed the order. *Id.* at 871; *see Quinter v. Volkswagen of Am.,* 676 F.2d 969, 974 (3d Cir.1982). "[W]here there is some reasonable basis upon which to doubt the wrongfulness of [contemnors'] conduct, they should not be adjudged in contempt." *Robin Woods, Inc. v. Woods,* 815 F.Supp. 856, 868 (W.D.Pa.1992) (citing *American Greetings Corp. v. Dan–Dee Imports,* 807 F.2d 1136, 1140 (3d Cir.1986), and *Quinter,* 676 F.2d at 974).

■ 13. If the Court finds a party to be in civil contempt, the Court may impose imprisonment on the contemnor until he complies with the Court's Orders, *see Hicks ex rel. Feiock v. Feiock,* 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), or a fine, payable either to the complainant as "compensation for damages caused by the . . . noncompliance" or to the court unless the defendant complies with the court's orders. *Roe,* 919 F.2d at 868. If, however, the fine is

unconditionally payable to the Court, then the fine is punitive, and the contemnor is held in criminal contempt. *See Hicks,* 485 U.S. at 632, 108 S.Ct. 1423.

■ 14. Prior to holding a party in contempt, the Court must have comported with the requirements of due process. *See Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1127 (3d Cir.1990). "Due process generally requires an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Roe v. Operation Rescue,* 920 F.2d 213, 217 (3d Cir.1990).

■ 15. Here, the defendants have established by clear and convincing evidence that the three elements necessary to establish contempt are present. In fact, in this case, there is no dispute that the Court's Order was valid,[4] that Mr. deLone had knowledge of the Order, and that he disobeyed it by not paying the sanction imposed. *See Roe,* 919 F.2d at 871.

16. In addition, the requirements of due process have been met. Mr. deLone was provided notice of the hearing by the Court's June 5, 1998 Order, as well as, at the June 9, 1998 hearing. The Court also afforded Mr. deLone a continuance when he so requested. Furthermore, the defendants' motions and the Rule to Show Cause placed Mr. deLone on notice that civil contempt was being sought by the plaintiffs. *See Roe,* 919 F.2d at 868 ("[C]ivil contempt proceedings are usually instituted on the motion of the plaintiff, not the court.").

17. Given the clear existence of the elements of contempt and the satisfaction of the due process requirements, there is no question that Mr. deLone should be held in contempt.

---

**4.** In connection with his motion to stay the proceedings, Mr. deLone argues that he is likely to succeed on the merits of his appeal of the sanctions order because he was not afforded due process. To the extent that this argument challenges the validity of the Court's May 8, 1998 Order, it is without merit. On this issue, the Third Circuit has held that:

A person who makes a private determination that an order is incorrect, or even unconstitu-

tional, may properly convicted of criminal contempt for violation of the order even if his or her private determination is later proven correct in the courts.

*United States v. Stine,* 646 F.2d 839, 845 (3d Cir.1980) (citing *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *Howat v. Kansas,* 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922)).

18. The only remaining issue is whether Mr. deLone has advanced any valid defenses. In his memorandum in opposition to defendants' motions to have him held in contempt and at the contempt hearing, Mr. deLone argued that he should not be held in contempt of Court because: (a) contempt proceedings should not be used when a writ of execution on judgment is available to the parties attempting to collect funds; and (b) he does not have the ability to pay. Also, in connection with his motion for a stay of the proceedings, Mr. deLone argued orally, on June 9, 1998, that paying the sanction would make it appear as though he agrees with the Court's conclusion that he acted in bad faith in the underlying litigation; a conclusion with which he disagrees.[5] To the extent that Mr. deLone contends that other people's perceptions of his culpability relieves him from obeying the Court's Order, the Court will consider that argument as well.

■ 19. The Court will first address Mr. deLone's contention that the Court's May 8, 1998 Order, which imposed sanctions upon him, is a money judgment, and therefore, should be enforced by writ of execution rather through contempt proceedings. This proposition is legally incorrect. The use of the contempt power to enforce a sanction for misconduct is appropriate because a sanction for misconduct is not an ordinary money judgment. *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir.1997) (citing *Alpern v. Lieb*, 11 F.3d 689 (7th Cir.1993)).

20. The cases cited by Mr. deLone to the contrary are distinguishable and do not support Mr. deLone's argument. Neither *Robbins v. Labor Transportation Corp.*, 599 F.Supp. 705, 707 (N.D.Ill.1984),[6] nor *United States v. Gritz Brothers Partnership*, 868 F.Supp. 254, 256–57 (E.D.Wis.1994) involved an order requiring counsel to pay attorney fees for counsel's misconduct during the litigation. Rather, both cases involve the efforts by prevailing parties to enforce money judgments entered in the underlying litigation, part of which involved the payment of attorney fees. The distinctions between sanctions and money judgments are warranted in light of public policy. While sanctions for misconduct implicates the very integrity of the Court's processes, enforcement of a money judgment as between private parties is best left to the creditor-debtor mechanisms provided for in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 69(a).

■ 21. Next, the Court addresses Mr. deLone's claim that he is financially unable to pay the $4,000 sanction. Though it is well-settled that impossibility of performance is a valid defense to a motion for contempt, *see United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), and that a party cannot be held in contempt for failure to obey a sanctions order if he lacks financial ability to comply with that order, *see Tinsley v. Mitchell*, 804 F.2d 1254, 1256 (D.C.Cir.1986) (per curiam); *O'Leary v. Moyer's Landfill, Inc.*, 536 F.Supp. 218, 219 (E.D.Pa.1982), the burden of production and proof rests on the alleged contemnor to establish the defense, *see Rylander*, 460 U.S. at 757, 103 S.Ct. 1548; *O'Leary*, 536 F.Supp. at 219. In other words, the contemnor "must show 'categorically and in detail' why he is

---

5. His exact words were as follows:

I also think, your Honor, if somebody comes up to me and says to me, "Sandy deLone, if your a jerk pay me $10, and I pull out $10 and give it to him," then everybody in the world is going to say, "Okay, deLone admits he's a jerk."

That's the way people typically think. I'm talking about clients, clients who might come to me, that's the way they think. If I have sanctions imposed against me for supposedly dealing in bad faith and I go ahead and pay those sanctions, then people will typically think gee wiz, he must admit that he dealt in bad faith.

That is not the case, I do not believe I ever dealt in bad faith in this situation. Obviously, we have a disagreement there, Your Honor, but I do not believe I have dealt in bad faith. I do not believe I'll get due process with respect to the sanctions order. I believe there are many grounds on which to challenge it. (Hg. Tr. 6/9/98 at 18–19.)

6. To the extent that the *Robbins* proposes to state a general rule that the contempt power is inappropriate to enforce a court's order regarding the payment of attorney fees, that statement is dicta because the *Robbins* court, even in the face of a money judgment, *did* order the party to show cause why he should not be held in contempt for failure to pay the attorney fees.

unable to comply." *O'Leary*, 536 F.Supp. at 219 (quoting *N.L.R.B. v. Trans–Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir.1973)). A plea of poverty without adequate proof will not do it. Furthermore, unless a party is completely unable to comply with the Court's Order's due to poverty, he must comply to the extent that his finances allow him. *See S.E.C. v. Musella*, 818 F.Supp. 600, 602 (S.D.N.Y.1993).

22. Mr. deLone has failed to meet his burden in establishing this defense of impossibility. Although he was specifically asked by the Court on three occasions whether he wanted to present evidence on the point, Mr. deLone did not put forward any evidence regarding his inability to pay the sanction. Rather, Mr. deLone chose to rely on conclusory statements contained in the affidavit to his memorandum in opposition to defendants' motions to have him held in contempt, claiming that, aside from property owned jointly with his wife which he believes should not be considered, Mr. deLone only owns clothing and personal items valued at $200 to $300. Specifically, the affidavit is completely devoid of detail concerning income and expenses. Therefore, the affidavit does not show "categorically and in detail" why Mr. deLone is unable to comply with the Court's Order imposing sanctions. *See O'Leary*, 536 F.Supp. at 219.

23. Finally, the Court will address Mr. deLone's argument regarding his disagreement with the Order of the Court which forms the basis for the Court's action today. It is elementary, in fact so basic that without it courts would cease to function, that disagreement with an order of the court does not relieve a party from complying with the order's directives unless a stay is granted or the order is reversed or vacated. In fact, even in situations where the order is later proven to be incorrect, or even unconstitutional, a person can properly be held in contempt for violating the order. *United States v. Stine*, 646 F.2d 839, 845 (3d Cir.1980) (citations omitted). This argument, when as here it is, advanced by a member of the bar,

such as Mr. deLone, is nothing short of frivolous.

**AND IT IS SO ORDERED.**