**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard W. (Dick) RYLANDER, Sr.,
Defendant-Appellant.**

**Nos. 80–4594, 80–4595.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 17, 1981.

Decided Sept. 4, 1981.

Norris, Circuit Judge, filed a concurring opinion.

Joseph F. Harbison, III, Mandich, Clark & Barker, Sacramento, Cal., for defendant-appellant.

Michael L. Paup, Charles E. Brookharl, Washington, D.C., for plaintiff-appellee.

Before WALLACE, FLETCHER and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

This is an appeal from an order holding Rylander in civil contempt for failure to comply with an IRS summons. The court below ordered Rylander incarcerated until he produces the records described in the summons or testifies as to why he cannot do so. Rylander appeals pursuant to 28 U.S.C. § 1826(b) and 28 U.S.C. § 1291. We hold that the government has not met its burden of proving that Rylander has the specified records, and we reverse and remand.

## I

### FACTS

These contempt proceedings arose out of an IRS attempt to investigate the tax liability of two corporations, Rylander and Company Realtors, Inc., and Affiliated Investments and Mortgage Company. The IRS issued a summons to Richard W. Rylander, Sr., as president of the corporations, ordering him to testify and to produce certain records of the corporations. The IRS petitioned the district court for judicial enforcement of the summons, I.R.C. §§ 7602, 7604(b), and on November 19, 1979 the district court issued an order to show cause why the summons should not be enforced.

A show cause hearing was scheduled for January 14, 1980, and Rylander was duly served with notice. Rylander did not appear at the hearing, nor did he file pleadings in response to the show cause order. Instead, he returned the order to the court, together with a letter claiming that he was not the president of the subject corporations and had thus been improperly served. The court nevertheless proceeded with the show cause hearing on January 14. Following an offer of proof and testimony by IRS agents, the court concluded that Rylander was president of the corporations. The court then enforced the summons, ordering Rylander to appear before an IRS agent on February 4, 1980 and produce the records requested by the IRS.

Rylander appeared on February 4, but brought no records with him. He stated that he did not have any of the records called for by the summons, and that he had therefore complied with the summons as far as he was able. He then refused to answer any further questions.

The IRS petitioned for enforcement of the court's order, and the court issued an order to show cause why Rylander should not be held in contempt. Attempts to serve Rylander with this order and several subsequent orders to show cause were unsuccessful. Finally, on May 27, 1980, the court determined that Rylander was avoiding service and issued a bench warrant for his arrest.[1]

On October 8, 1980, the court held a show cause hearing to determine whether Rylander should be held in contempt for failure to obey the order enforcing the summons.[2]

The court concluded that, while inability to comply with the summons would constitute a defense to the contempt charges, Rylander had the burden of showing that he was unable to comply and had failed to meet his burden. The court found Rylander guilty of civil contempt, and ordered him

> remanded to the custody of the Attorney General unless and until he purges himself of the civil contempt charge by either: (1) Complying with the Court Order to produce the documents; or (2) Testifies [*sic*] why he cannot produce the documents.

At this point, Rylander stated that he wished to purge himself of the contempt by testifying as to why he could not produce the documents. The government responded that it intended to cross-examine Rylander on his testimony. The court then continued the proceedings until the following day so that counsel could be appointed to represent Rylander. The next morning Rylander submitted a sworn "Oath in Purgation of Contempt" stating that he did not have any of the records called for by the IRS summons. Recognizing that Rylander's fifth amendment rights might be involved, the court vacated its contempt order and continued the proceedings until October 23, 1980 to give counsel an opportunity for further briefing.

On October 23, Rylander took the stand and testified that he did not have the records. When asked where the records were, he declined to answer on fifth amendment grounds. The court then reinstated its order of October 8, holding Rylander in contempt and setting the same purging condi-

---

1. Rylander was charged with criminal contempt for avoiding service, for failing to comply with an earlier order to produce, and for failing to appear at a show cause hearing. The latter two charges resulted in convictions, which are the subject of a separate appeal.

2. Rylander was not represented by counsel at this hearing. We find no merit to Rylander's claim that his right to counsel was violated, however. We note that Rylander dismissed his appointed counsel on two occasions, refused to retain private counsel, and, when informed of his rights, unequivocally informed the court that he wished to proceed without counsel. We also find that Rylander had no right to a jury trial, that the court's decision to combine the civil and criminal contempt proceedings was proper, and that the trial judge did not err in refusing to disqualify himself.

tions. Incarceration was suspended pending this appeal.[3]

## II

### DISCUSSION

■ The purpose of a civil contempt sanction is to compel compliance with a court's order. *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980); *United States v. Asay*, 614 F.2d 655, 659 (9th Cir. 1980). If compliance is impossible, a contempt sanction can serve no purpose. For this reason, inability to comply is generally recognized as a defense to a charge of civil contempt. *Asay*, 614 F.2d at 660; *see United States v. Hankins*, 565 F.2d 1344, 1351–52 (5th Cir. 1978); *United States v. Rizzo*, 539 F.2d 458, 465–66 (5th Cir. 1976).[4] In this case, the trial court's contempt order was designed to compel Rylander to produce the documents covered by the IRS summons. Rylander has claimed that he is unable to comply, but has put forth no evidence other than his own sworn statement in support of his claim. In order to determine whether Rylander was properly held in contempt, we must therefore decide two questions: First, who has the burden of proving Rylander's ability or inability to comply with the summons? And second, has that burden of proof been met? Our analysis is, of course, colored by our recognition that Rylander has asserted what appears to be a bona fide fifth amendment claim.[5]

### A. Res Judicata.

■ As a preliminary matter, we must consider the government's contention that at the time of the contempt hearing, Rylander was foreclosed from asserting that he did not have the documents. In the government's view, Rylander could have asserted this defense during the summons enforcement proceeding. Because he failed to do so, the government argues that the enforcement order is *res judicata* on the issue of whether Rylander actually had the documents. We disagree. As the government itself points out, enforcement proceedings under I.R.C. § 7604(b) are summary in nature. When the IRS seeks to enforce a summons, its burden is very light; it need only show "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the [Internal Revenue] Code have been followed." *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). The IRS need not show that the information sought is in the possession of the person summoned. *United States v. Freedom Church*, 613 F.2d 316, 322 (1st Cir. 1979).

3. Under 28 U.S.C. § 1826, Rylander could be confined for the life of the court proceeding or eighteen months, whichever is shorter. *United States v. Powers*, 629 F.2d 619, 626 (9th Cir. 1980).

4. In *Asay* we distinguished between "compulsory" civil contempt sanctions, designed to compel the respondent to comply with a court order, and "compensatory" civil contempt sanctions, *i. e.*, fines, designed to compensate the government for costs incurred as a result of the respondent's failure to comply with a court order. We held that self-induced inability to comply is not a defense to the imposition of a "compensatory" contempt sanction. 614 F.2d at 660. Since the proceedings here are clearly compulsory in nature, inability to comply is a complete defense. *Id.*

5. Since the documents belong to the corporations and not to Rylander personally, Rylander could not refuse to produce the documents on the ground that their contents might serve to incriminate him. *E. g., Curcio v. United States*, 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957). However, Rylander's claim is that answering questions as to the documents' whereabouts might serve to incriminate him. A custodian of records cannot, consistent with the fifth amendment, be forced to answer such questions. *Id.* at 128, 77 S.Ct. at 1151; *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318 (2d Cir. 1979).

■ In the present case, the enforcement proceeding did not result in a finding that Rylander had possession of the documents. The court limited its inquiry to the issues of whether Rylander was the president of the corporations being investigated, and whether the *Powell* conditions had been met. As noted above, Rylander did not appear and did not raise any defenses. Since a finding on Rylander's ability to comply with the summons was unnecessary at the enforcement stage, and since no such finding was made, we hold that Rylander was not foreclosed from claiming during the contempt proceedings that he was unable to comply with the summons.[6]

### B. *Burden of Proof.*

■ In a civil contempt proceeding, the proof of contempt must be clear and convincing. *United States v. Powers*, 629 F.2d 619, 626 n.6 (9th Cir. 1980); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976). To make a prima facie showing of contempt, however, the government need prove only that the defendant has failed to comply with a valid court order. It need not prove that the defendant is able to comply. As we stated in *NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973) (citations omitted),

> although inability to comply with a judicial decree constitutes a defense to a charge of civil contempt, the federal rule is that one petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply. The contrary burden is upon the respondent. To satisfy this burden the respondent must show

"categorically and in detail" why he is unable to comply.

■ We view *Trans Ocean* as imposing on the defendant a burden of production. This burden is normally satisfied when the defendant produces sufficient evidence of his inability to comply to raise a question of fact. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n.8, 101 S.Ct. 1089, 1094 & n.8, 67 L.Ed.2d 207 (March 4, 1981); *see United States v. King*, 587 F.2d 956, 964–65 (9th Cir. 1978). The burden of persuasion remains on the government, but what may be required to sustain the burden varies according to the evidence produced by the defendant. Initially, the government need persuade the court only that the defendant has failed to comply with a valid court order. Once the defendant has produced detailed evidence regarding his inability to comply with the order,[7] the government has the additional burden of persuading the court that the defendant actually is able to comply. *Cf. United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (in criminal case, government has burden of disproving only those defenses which are actually raised).

Rylander asserts that he cannot "show 'categorically and in detail' why he is unable to comply" without incriminating himself. He argues that application of the *Trans Ocean* rule to his case would therefore violate his fifth amendment rights. No fifth amendment claim was involved in *Trans Ocean*, so the court had no opportunity to consider whether the rule it announced could constitutionally be applied in

---

6. If the issue of Rylander's ability to comply with the summons had been actually litigated during the enforcement proceedings, we might reach a different result. *See Maggio v. Zeitz*, 333 U.S. 56, 68–69, 68 S.Ct. 401, 407–408, 92 L.Ed. 476 (1948); *United States v. Asay*, 614 F.2d 655, 659 (9th Cir. 1980). At the very least, we would expect that during the contempt proceeding the court would take judicial notice of any findings made at the enforcement stage.

*See United States v. Hankins*, 565 F.2d 1344, 1351 & n.3 (5th Cir. 1978).

7. The type of evidence needed to satisfy the defendant's burden of production will, of course, vary from case to case. We need not decide what evidence will satisfy the defendant's burden when no fifth amendment claim is raised.

cases such as this one.[8] We now conclude that it cannot, and that if Rylander's fifth amendment claim is valid, his rights would be violated if he were required to produce categorical and detailed evidence demonstrating his inability to comply with the court's order enforcing the summons.

The government suggests that Rylander might be able to show his inability to comply by adducing unprivileged testimony from third persons. This suggestion is merely speculative, however. If there are no third persons who could testify as to the whereabouts of the documents, Rylander would be forced to submit to incarceration or run the risk of incriminating himself. It is exactly this dilemma which the fifth amendment is designed to protect against. *See Curcio v. United States*, 354 U.S. 118, 123–24, 128, 77 S.Ct. 1145, 1149–50, 1151, 1 L.Ed.2d 1225 (1957).

■ We do not mean to suggest that a defendant in Rylander's position can simply stand mute and force the government to come forward with proof that the defendant is able to comply with the court's order. It is clear that when the defendant gives no indication that he cannot comply, the government need prove only his noncompliance. *McPhaul v. United States*, 364 U.S. 372, 378–79, 81 S.Ct. 138, 142–43, 5 L.Ed.2d 136 (1960); *Trans Ocean*, 473 F.2d at 615–16; *United States v. Hankins*, 565 F.2d 1344, 1351–52 (5th Cir. 1978). We therefore hold that when a court order requires the production of documents, the defendant must either produce the documents or state under oath that they are not in his possession or under his control. *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318 (2d Cir. 1979). Although the defendant would ordinarily have the burden of producing detailed evidence regarding his inability

to comply, *Trans Ocean*, 473 F.2d at 616, he cannot be forced to produce such evidence if he properly claims that his testimony as to the whereabouts of the documents might be incriminatory. *Curcio*, 354 U.S. at 123–25, 77 S.Ct. at 1149–50; *O'Henry's Film Works*, 598 F.2d at 318.

■ When the defendant has made a bona fide fifth amendment claim, his statement that the documents are not in his possession or under his control is sufficient to satisfy his burden of production. The burden then shifts to the government to produce evidence showing that the documents in question actually exist and are in the defendant's possession or under his control. *United States v. Hansen Niederhauser Co.*, 522 F.2d 1037, 1040 (10th Cir. 1975); *see United States v. Fleischman*, 339 U.S. 349, 353–55, 70 S.Ct. 739, 741–42, 94 L.Ed. 906 (1950). Although relevant, inferences that the records sought are of a type ordinarily kept by corporations, and that a person in the defendant's position would ordinarily have control over such records are not adequate to meet the government's burden of proof.

■ Applying the standard we have articulated above, we hold that if Rylander's fifth amendment claim is valid, his statement that the documents were not in his possession or under his control was sufficient to meet his burden of production. We must remand for the district court to make a finding concerning the validity of Rylander's fifth amendment claim. *Davis v. Fendler*, 650 F.2d 1154, 1159–60 (9th Cir. 1981); *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). If the court finds that Rylander's fifth amendment claim is valid, the government will have an opportunity to show that the sum-

---

**8.** In *Trans Ocean* the respondents did not claim that they could not comply with the court's order. Instead, they argued (1) that the petition for an adjudication of contempt was defective in that it failed to allege that respondents could comply with the order, 473 F.2d at 615,

and (2) that the government failed to prove beyond a reasonable doubt that respondents could comply, *id.* at 616. The court held that such allegations and proof were unnecessary. *Id.* at 615–16.

moned records are in Rylander's possession or under his control. The court should permit the government to introduce additional evidence in order to meet its burden. At this stage of the proceedings, however, we must conclude that the government has not met its burden of showing by clear and convincing evidence that Rylander is in contempt. The order of the court below must therefore be reversed.

REVERSED AND REMANDED.

NORRIS, Circuit Judge, concurring.

I believe the majority decides, unnecessarily, a novel Fifth Amendment question, yet fails to address squarely a nonconstitutional issue that I believe is dispositive of this appeal.

I agree with the majority that the defendant carries the initial burden of production on the issue of his inability to comply with a summons to produce documents, which, as the majority notes, is a defense to a charge of civil contempt. I also agree that once this initial burden is met, the government has the ultimate burden of persuading the court that the defendant is able to comply.

Where I have difficulty with the majority is its failure to analyze whether Rylander's sworn statements were sufficient to meet his burden of production. The majority gives Rylander credit for nothing more than a general denial that he had any of the records called for by the summons, when in fact his response was much more detailed. In his oath of purgation, Rylander stated:

> I know not the location of any such records, if any there be, or that any such records, if any there be, are in any way under my control or supervision or that I have in any way placed such records, if any there be, in the hands of other persons to hold for me. I further swear an oath that I have no intent, plan or pur-

pose to withhold any such records, if any there be, from the Court. . . .

In my view, such a detailed statement denying under oath knowledge of the location of any such records or that any such records are in his possession or control should be sufficient to put into issue defendant's "inability to comply" defense, shifting the burden of going forward back to the government. To require him to produce more evidence runs a serious risk of threatening a person with imprisonment for failure to do what may be difficult if not impossible for him to do, *i. e.*, adduce evidence, beyond his own denials, to prove a negative—the nonexistence of the subpoenaed records or his lack of possession or control of such records. *Cf. Battaglia v. United States*, 653 F.2d 419 (9th Cir. 1981) (in a contempt proceeding for failure to answer questions before a grand jury, defendant's testimony that he did not remember the events in question is sufficient to meet his burden of production on the issue of inability to comply).

Like the majority, I agree that the case should be remanded to give the government an opportunity to carry its burden of persuasion that Rylander has the ability to produce the records. To be sure, in attempting to carry that burden the government may question Rylander concerning the existence of the records and any knowledge he may have of their whereabouts.[1] Rylander may again decline to answer the questions on Fifth Amendment grounds, leaving it to the trial judge to determine whether his assertion of the privilege is bona fide. But there is no need to decide now what the majority seems to hold, *i. e.*, that a defendant who fails to satisfy his burden of production on his inability to comply, may effectively carry that burden by claiming the Fifth Amendment privilege.

1. The testimony of third parties concerning the whereabouts of the records as well as evidence "that the records sought are of a type ordinarily kept by corporations, and that a person in the defendant's position would ordinarily have control over such records" would of course also be relevant to the question of defendant's ability to comply.