Ivan L. SIDNEY, etc., Plaintiff,

v.

Peter MacDONALD, et al., Defendants.

No. Civ. 579 PCT–EHC.

United States District Court,
D. Arizona.

March 29, 1982.

John Paul Kennedy, Scott C. Pugsley, Boyden, Kennedy & Romney, Salt Lake City, Utah, Philip E. von Ammon, Fennemore, Craig, von Ammon & Udall, Phoenix, Ariz., for plaintiff.

George Vlassis, Vlassis & Ruzow, Michael D. Hawkins, U. S. Atty., Richard S. Alleman, Asst. U. S. Atty., Phoenix, Ariz., William French Smith, Atty. Gen., and Steven E. Carroll, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CARROLL, District Judge.

On July 23, 1981, then Chairman of the Hopi Tribe, Abbott Sekaquaptewa, acting in his representative capacity for and on behalf of the Hopi Tribe, filed a Motion For Order To Show Cause Re: Contempt, against Defendants Peter MacDonald, acting in his representative capacity as the Navajo Tribal Chairman, the Navajo Tribe and individual members of the Navajo Tribe. Ivan L. Sidney, current Hopi Tribal Chairman, has been substituted as Plaintiff. An evidentiary hearing on this matter was held on December 2 and 3, 1981. Appearing were John Paul Kennedy and Richard Hymas for Plaintiff, George P. Vlassis, Gary Verburg and Katherine Ott for Defendants, and Richard Alleman for the United States.

Plaintiff's motion was amended prior to hearing to drop the allegations of contempt levied against the individual members of the Navajo Tribe. The amended complaint makes four requests. First, Plaintiff seeks an order of contempt against Defendants Peter MacDonald and the Navajo Tribe for failing to comply with the September 11, 1980, Court order in that such Defendants have not caused to be disassembled and removed certain structures found to have been unlawfully constructed on Hopi partitioned lands ("old-new construction") in violation of Paragraph (A), of the September 11, 1980, order. Second, the Hopi Chairman seeks a declaration that additional structures, not the subject of the September 11, 1980, order, have been constructed since February 10, 1977, ("new-new construction") in violation of Paragraph (C), of the September 11, 1980, order and Paragraph 7(b), of the February 10, 1977, order. Third, the Plaintiff moves that a mandatory injunction be issued directing Defendants Peter MacDonald and the Navajo Tribe to disassemble and remove such "old-new construction" and "new-new construction". Fourth, Plaintiff seeks an award of costs and attorneys' fees.

Following the presentation of evidence, the Court took this matter under advisement. The Court has considered the Plaintiff's motion for contempt and all matters relevant thereto and enters the following Memorandum Opinion and Order:

FACTS

On February 10, 1977, the Court entered a Judgment of Partition with respect to the Hopi-Navajo Joint Use Area. The Judgment of Partition, at paragraph 7(b), provided that "no new construction in the area hereby partitioned to the Hopi Tribe shall hereafter be commenced or continued by the Navajo Tribe, or any member thereof, without the written authorization of the Hopi Tribe."

On September 14, 1979, Plaintiff filed its Second Motion For Order To Show Cause And Preliminary Injunction. Plaintiff alleged that the Navajo Tribe and/or certain members thereof had engaged in unlawful new construction on Hopi lands in violation of paragraph 7(b) of the Court's February 10, 1977, Judgment of Partition. An order to show cause was obtained and served upon Defendant Peter MacDonald and the Navajo Tribe, requiring them to appear and show cause why a contempt order and a mandatory injunction should not issue against them and why costs and attorneys' fees should not be assessed.

Following an evidentiary hearing on the show cause matter, the Court entered its Findings of Fact, Conclusions of Law, and Order on September 11, 1980. The order provided in pertinent part as follows:

(A) Defendant Peter MacDonald and the Navajo Tribe on behalf of the members of the Navajo Tribe, shall, within ninety (90) days, cause the buildings found to be "new construction" under the Court's Order of February 10, 1977, and described in Findings of Fact Nos. 9, 10, 12, 13, 14, 16, 17, 23, 24, 25, 27, 28, and 30, to be disassembled and removed from their present location to a place outside the Hopi Reservation.[1]

\*      \*      \*      \*      \*      \*

(C) The provisions of Paragraph 7(b) of the Judgment of Partition continue to be in full force and effect and binding upon the Navajo Tribe, the Tribal officers, and the individual tribal members, villages, and clans.

---

1. The disputes with respect to the structures described in Findings of Fact Nos. 13, 14, 16, 17, 25, 27 and 30 were resolved prior to the

Plaintiff contends that Defendants have failed to comply in certain instances with either of these provisions. Accordingly, this motion for an order of contempt and mandatory injunction was filed.

DISCUSSION

I. *CONTEMPT ORDER RE: "Old-New Construction"*

■ In a civil contempt proceeding the burden of persuasion is on the movant to establish by clear and convincing evidence proof of contempt. *United States v. Rylander,* 656 F.2d 1313 (9th Cir. 1981). In such proceedings the *prima facie* showing consists of proof that the "defendant has failed to comply with a valid Court order". *Id.* Once a *prima facie* showing has been made, the defendant must provide an explanation for the failure to comply. *Id., N. L. R. B. v. Trans Ocean Export Packing, Inc.,* 473 F.2d 612, 616 (9th Cir. 1973).

Here, Defendants Peter MacDonald and the Navajo Tribe have provided the Court with two explanations for their failure to comply with the September 11, 1980, order. First, Defendants argue that they cannot be held in contempt for the conduct of individual Navajo Tribal members over whom they have no control. Defendants urge that such inability to comply is an absolute defense. Second, Defendants argue that the evidence demonstrates that they have taken all reasonable steps within their power to secure compliance and have thus discharged the duty imposed by the September 11, 1980, order.

A. *Plaintiff's Prima Facie Case*

The Hopi contend that Defendants Peter MacDonald and the Navajo Tribe have failed to comply with Paragraph (A) of the September 11, 1980, order with respect to Findings of Fact Nos. 9, 10, 12, 23, 24 and 28 which describe the following structures:

9. In July through October, 1979, Violet Ashkey, a member of the Navajo

---

evidentiary hearing in December, 1981, and accordingly are not now in issue.

---

Tribe, without Hopi permission, engaged in the construction of a new home within the Hopi partitioned area, as shown in Plaintiff's Exhibit I(A), being the partially constructed building near the blue-roofed hogan. (R.T. Jan. 15, pp. 4–5).

10. Between September 5, 1979, and October 18, 1979, Guy and Esther Sosi, members of the Navajo Tribe, without Hopi permission, engaged in the construction of a hogan located south of the Low Mountain area within the Hopi partitioned area, as shown in Plaintiff's Exhibit II(A). (R.T. Jan. 15, p. 136).

\* \* \* \* \* \*

12. Tommy White, a member of the Navajo Tribe, engaged in the construction of a shed near the site of the house shown in Exhibit III(A), located on Hopi land, without Hopi permission, in May-June of 1979. (R.T. Jan. 15, p. 41).

\* \* \* \* \* \*

23. During the summer of 1979, Mr. Stutterer, without Hopi permission, built a hogan within the Hopi partitioned area. (R.T. Nov. 30, p. 266).

24. During the Fall of 1979, members of the Navajo Tribe, without Hopi permission, engaged in construction of a hogan shown in Plaintiff's Exhibits VIII(A) and VIII(C) belonging to Nellie Begay. The hogan is located within the Hopi partitioned area. (R.T. Jan. 15, p. 127).

\* \* \* \* \* \*

28. The home belonging to Ruth Benally shown in Plaintiff's Exhibit XV(A), is new and was constructed within the Hopi partitioned area, without Hopi permission, after this Court had entered its February 10, 1977, order. (R.T. Jan. 15, p. 144).

In order to make a *prima facie* showing of a violation regarding this "old-new construction", Plaintiff must show that (a) the challenged structures were declared by the September 11, 1980, order to be in violation of the February 10, 1977, order and (b) such structures had not been entirely dismantled and removed as contemplated by the September 11, 1980, order.

Here, the Court finds that in all cases such *prima facie* showing has been made by way of stipulation or uncontroverted evidence. Accordingly, absent any recognizable defense to the contrary, a contempt citation must issue with respect to Findings of Fact Nos. 9, 10, 12, 23, 24 and 28 of the September 11, 1980, order.

B. *The Defenses*

1. *Inability To Comply*

■ The Ninth Circuit has recently reaffirmed its position regarding the burden on respondent with respect to the defense of inability to comply. Quoting from *N. L. R. B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973), the Court states as follows:

> . . . although inability to comply with a judicial decree constitutes a defense to a charge of civil contempt, the federal rule is that one petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply. The contrary burden is upon the respondent. To satisfy this burden the respondent must show "categorically and in detail" why he is unable to comply.

*United States v. Rylander*, 656 F.2d 1313, 1316 (9th Cir. 1981).

Defendants Peter MacDonald and the Navajo Tribe argue, as they have in prior proceedings, that they are unable to comply with the September 11, 1980, order because they are without jurisdiction over individual Navajos living on the Hopi partition of the former Joint Use Area. This argument is premised upon the Navajo Tribe's inability to enter Hopi lands for purposes of effectuating the order themselves. The Defendants do not argue that they lack the power to impose Navajo laws on individual tribal members residing on Hopi land. Thus, Defendants seek to establish their inability to comply with the Court's order merely by proving that the contemptuous conduct results from the individual-isolated activities of certain tribal members. As in prior proceedings, the Court finds this argument to

be without merit for the reasons which follow.

It is clear that the Court has the power to enter orders against either tribe which directly affect the rights and interests of that tribe's membership. *Sekaquaptewa v. MacDonald*, 591 F.2d 1289 (9th Cir. 1979). In *Sekaquaptewa* the Ninth Circuit settled the issue relating to the identity of proper parties in actions seeking a resolution of intertribal disputes. The Court held that while either tribe, acting through its chairman may bring an action against the other, individual tribal members are "barred from participating". *Id.* at 1291. Such prohibition applies even if the dispute involves or affects the rights of individual tribal members. The rationale is that Congress intended that there be "quick and fair resolution" of such disputes. *Id.* If individual persons were allowed to participate, such intent would be quickly frustrated. Thus, the Circuit Court concluded that each tribe, acting through its chairman, was the proper representative party for its respective membership.

█ Extrapolating from this principle to the next logical step, it is clear that if the tribe adequately represents the interests of its membership, then a Court may properly enter an order directing them to cause their members to take certain actions.

█ Here, the Navajo argue that they "lack jurisdiction" over those individual Navajos residing on Hopi partitioned lands. However, the Navajo have failed to demonstrate that these persons are no longer subject to Navajo tribal authority. In the absence of such proof the claimed defense of inability to comply based upon "lack of jurisdiction" cannot stand.

The Plaintiff's Response To Defendants' Post-Hearing Memorandum In Opposition To Plaintiff's Second Order To Show Cause, filed March 19, 1980, sets forth an illustrative list of reasonable actions which the Hopi claimed the Navajo Tribe has the power to impose on individual Navajos residing on Hopi partitioned land. Such actions include:

1. Withholding of tribal benefits
2. Imposing administrative requirements
3. Monitoring the acquisition of construction materials by the individual Navajos residing on Hopi partitioned lands.

In Plaintiff's Response to Defendant MacDonald's Memorandum in Response to Plaintiff's Second Motion for Order To Show Cause and Preliminary Injunction, filed November 15, 1979, Plaintiff asserted that as a result of the partition order, the Navajo Tribe need not resort to adopting regulations for the purpose of compelling the compliance of its membership. The Hopi argued that presently the Navajo officials need only "to seek enforcement of the Court's prohibition by bringing offenders directly to the attention of the Court." *Id.* at 5.

In this case, the Navajo Defendants failed to demonstrate that they have attempted to do any of the above.

Defendants have offered no adequate legal explanation as to why they are unable to comply with the order. Accordingly, the Court finds that the Defendants have not shown "categorically and in detail" why compliance is impossible and thus, have not met their burden of proof with respect to this defense. Therefore, whether Defendants are to be excused for their non-compliance depends upon whether good faith efforts have been made to take all reasonable steps within their power to secure compliance.

### 2. Good Faith Efforts

█ The situation presented is similar to certain union-management disputes which frequently arise during a wildcat labor strike. In such situations, it is well settled that while the union's responsibility for the continued illegal strike activities of its membership is not absolute, such organization may nevertheless find itself in contempt of court if it has not engaged in good faith efforts to secure the compliance of its membership with the cease and desist order. *United States v. International Union, Unit-*

ed Mine Workers of America, 77 F.Supp. 563, 566, affd. 177 F.2d 29, cert. denied 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535 (1949). See also Vulcan Materials Co. v. United Steelworkers of America, 430 F.2d 446, 455 (5th Cir. 1970). Thus, a labor organization does not establish its inability to comply with a cease and desist order merely by proving that the contemptuous conduct results from the stray activities of its membership. Similarly, the Navajo Tribe cannot establish its inability to comply with the September 1980, order merely by proving that contravention of such order occurs because of the stray activities of individual Navajos.

Mr. Percy Deal, Director of the Navajo-Hopi Land Dispute Office, testified to the various efforts taken by Defendants to comply with the September 11, 1980, court order. The Court has carefully reviewed this testimony and has concluded that the Navajo Tribe has not taken all reasonable steps within their power to secure the compliance of the Tribe and its membership.

First, there is no evidence that the Navajo Tribe ever sought to actively compel the compliance of the individual Navajos affected by the order. The Tribe has not passed regulations directed at this issue, nor have tribal sanctions been imposed. In the absence of such efforts or justification for failing to have done so, it cannot be said that all reasonable steps have been taken.

Secondly, the efforts that were taken consist in large part of simply communicating the requirements of the order to the individuals involved and their Chapter leaders.[2] The Court finds that merely advising those involved of their responsibilities under a court order is not enough. The law commands more than lip service to discharge one's duties imposed by a judicial decree.

Accordingly, the Court finds that Plaintiff has established a *prima facie* showing

of contempt, and Defendants have failed to establish a cognizable defense. The Court concludes that a contempt citation for the continued violation of the September 11, 1980, order of this Court is proper.

### C.   The Remedy

As the order which follows set forth in detail, the Court has determined it necessary to (a) grant the requested injunctive relief, (b) impose fines and (c) provide built-in monitoring devices.

The Court notes that Defendants' arguments concerning the equities involved with respect to the disassembly and removal of persons' homes are all irrelevant considering the present posture of this matter. Such arguments are properly raised in a motion to modify order or on appeal. The September 1980 order clearly required Defendants to cause the disassembly and removal of certain enumerated structures. The only issue now before this Court was whether such structures had been removed and, if not, whether the Defendants were otherwise excused. Defendants did not at any time seek to modify or amend the September 1980 order.

### II.   DECLARATORY JUDGMENT RE: "New-New Construction"

██  The second portion of Plaintiffs' motion seeks a declaration that nine additional structures discovered after the September 11, 1980, order fall within its continuation proscription against "new construction".

Several of the structures were constructed after the February 10, 1977, order and before the September 11, 1980, order, but were unknown to Plaintiff until recently. Others of the structures were built after the September 11, 1980, order. The Hopi contend that all of the structures violate Paragraph (C) of the September 11, 1980, order which incorporates Paragraph 7(b) of the February 10, 1977, Judgment of Partition.

---

**2.**  Some of the "good faith efforts" undertaken by the Navajo include letters sent by Mr. Deal to the individual Navajos in alleged non-compliance with the September 1980 order. These advisory letters were sent to such individuals on August 5, 1981, two full weeks after the Hopi Tribe filed the present motion for contempt. Such efforts come too little and too late to have any present credibility or relevance.

"New construction" has been judicially defined to be (a) any new structure built on Hopi partitioned land (b) by Navajos (c) without the written consent of the Hopi Tribe (d) after February 10, 1977. Such "new construction" does not include, however, construction that merely replaces a burned or dilapidated building or construction that adds to an existing building. *See* Findings of Fact, Conclusions Of Law And Judgment And Order On Citation For Contempt, filed May 29, 1974, paragraph 14, page 7. Accordingly, each alleged "new-new construction" will be first compared against this standard separately.

### A. *"Structural" Analysis*

#### 1. *Mrs. Violet Ashkey's Ramada*

Subsequent to the September 11, 1980, order Mrs. Violet Ashkey had the subject structure, Finding of Fact No. 9, of the September 1980, order, dismantled and removed. The foundation of such structure was allowed, however, to remain. (R.T. December 2, 1981, at page 19). A ramada was then built over this foundation by members of the Navajo Tribe. (R.T. at 20).

With respect to the ramada, the testimony establishes that Mrs. Ashkey, a member of the Navajo Tribe, engaged in the construction of a ramada over a foundation which was subject to the September 1980, order. Such ramada was built on Hopi partitioned land, without Hopi permission, after February 10, 1977, and constitutes new construction within the proscription of the previous Court orders.

#### 2. *Structure 66: Robert Begay's Stone Hogan With Mud Roof*

The record regarding this structure establishes that Robert Begay, a member of the Navajo Tribe, engaged in the construction of a hogan on Hopi partitioned lands, without Hopi consent after February 10, 1977. (R.T. December 2, 1981, at pages 35–36). Robert Begay's testimony was that

he constructed a replacement hogan for his 95 year old mother, sometime in November or December of 1980, after the beams supporting the old hogan broke. (R.T. December 2, 1981, at pages 183–188, 236). Although constructed some 100 feet from the old home site, the "new" hogan falls within the exception carved for "construction that merely replaces a dilapidated building".[3]

The Court finds that Plaintiff has established a *prima facie* case, but that Defendants have established that the construction is excepted. Accordingly, the Court finds that the hogan depicted in Exhibit 66 does not constitute "new construction" within the meaning of that term.

#### 3. *Structure 67: Stella Begay's Yellow Hogan With Brown Roof*

Defendants have admitted that the home shown in Exhibit 67 was built with new materials by members of the Navajo Tribe on Hopi partitioned lands after February 10, 1977. (R.T. December 2, 1981, at pages 38–39). The uncontradicted testimony of Percy Deal establishes that the home was constructed without Hopi consent. (R.T. December 2, 1981, at pages 39–40). Nevertheless, the testimony of Stella Begay reveals that the home was constructed as a replacement for her dilapidated hogan, which had been built some 24 years prior. Mrs. Begay testified that she had the old structure torn down to its foundation. The old foundation stones were relaid as a foundation for the "new" hogan. (R.T. December 2, 1981, at page 175). Plaintiff failed to present any evidence which rebutted Defendants' evidence that the earlier hogan was in fact dilapidated. Accordingly, the Court finds that Plaintiff has made a *prima facie* showing, but Defendants have established that the challenged structure is excepted from the order. Thus, the home identified in Exhibit 67 does not constitute proscribed "new" construction.

---

**3.** The Hopi argue that even though a roof beam broke necessitating repairs, the construction undertaken resulted in a "new hogan" being built 100 feet away and not the mere repair of a roof. (R.T. December 2, 1981, at page 213). Plaintiff did not offer any controverting evidence or testimony that such roof damage did not require the replacement of such hogan.

**4. Structure 68: Unknown Individual's Stucco House With Red Roof**

The uncontradicted testimony and admissions establish that the residence of an unknown Navajo individual depicted in Exhibit 68, was constructed on Hopi land by members of the Navajo Tribe without Hopi consent after February 10, 1977. (R.T. December 2, 1981, at pages 42, 179–182, 237). The approximate date of construction was not established.

The Court finds that such construction constitutes "new construction" within the meaning of the term as used in the September 11, 1980, and February 10, 1977, orders.

**5. Structure 69: Henry James' Hogan With Green Roof**

Defendants have admitted that the hogan with a green roof depicted at the top of Exhibit 69 was built on Hopi partitioned land by members of the Navajo Tribe after February 10, 1977. (R.T. December 2, 1981, at pages 44–45). Henry James testified that the structure in question was built "about two years ago" because the existing residence became too small for his family.[4] (R.T. December 2, 1981, at pages 164–171, 237). Defendants have failed to establish that such structure falls within the exceptions to the prohibition against "new construction". Accordingly, the Court finds that the hogan with a green roof depicted in Exhibit 69 constitutes new construction.

**6. Structure 72: Stan Begay's Partly Constructed Frame House**

Plaintiff has established that the structure shown in Exhibits 72A and 72B was built on Hopi partitioned land by members of the Navajo Tribe without Hopi consent after February 10, 1977. (R.T. December 2, 1981, at pages 46–48). Defendants have failed to present any evidence rebutting the Plaintiff's *prima facie* showing or establishing that such construction was covered by a permitted exception. Again, the approximate construction date was not established.

Accordingly, the Court finds that the home depicted in Exhibits 72A and 72B belonging to Stan and Wanda Begay constitutes new construction.

**7. Structure 73: Sally Yazzi's Wood Hogan**

Defendants, again, have stipulated that the wood hogan belonging to Sally Yazzi and depicted in Exhibit 73 was constructed on Hopi partitioned land by members of the Navajo Tribe after February 10, 1977, without Hopi permission. (R.T. December 2, 1981, at pages 49–50, 74). Such admissions constitute a *prima facie* showing of illegal new construction. The record does not reflect the date of construction. Defendants have neither rebutted this evidence nor presented an affirmative defense in this regard. Accordingly, the Court finds that the wood hogan depicted in Exhibit 73 is new construction within the meaning of that term.

**8. Structure 74: Melvin Bedonie's Shed With One Open Wall**

By the December 2, 1981, evidentiary hearing, Melvin Bedonie had torn the complained of structure down. (R.T. December 2, 1981, at pages 161–163). Accordingly, the issues associated with this item are moot.

**9. Structure 75: Phyllis Mose's Hogan With Unfinished Roof And Sides**

Defendants do not quarrel that the hogan shown in Exhibits 75A and 75B was built on Hopi land by Navajos and without Hopi consent. Defendants argue, however, that the Mose hogan was built prior to February 10, 1977. Alternatively, Defendants argue

**4.** Mr. James testified that he received the materials from the Flagstaff office of the Bureau of Indian Affairs and labor assistance from members of the Navajo Tribe employed under a CETA program. The fact that the Navajo Tribe CETA program serves to provide members of the Navajo Tribe vocational training by having such persons provide assistance and labor for the illegal construction of homes or other buildings on Hopi partitioned lands is evidence of the lack of attention which the Tribe has given to the orders of this Court. (See R.T. December 2, 1981, at pages 166, 140–142).

that the hogan was a replacement for a dilapidated building. (R.T. December 2, 1981, at pages 56, 62, 70). In this regard, the testimony is at odds.

Valjean Joshevama, former director of the Office of Hopi Partitioned Land, testified that it was his duty to monitor all activity on the Hopi partitioned lands, including construction activity. (R.T. December 2, 1981, at pages 16–17). Mr. Joshevama testified further that he had visited the area of Miss Mose's hogan shortly after February 10, 1977, but at that time the hogan in question had not been built. *Id.* at 54. Although he could not remember the precise date, Mr. Joshevama testified that sometime after February 10, 1977, he visited the site again and discovered that the construction of the hogan shown in Exhibits 75A and 75B was in progress. At the time he took the photographs, the hogan was unfinished. The walls were framed in and had exterior plywood paneling up, but the interior was incomplete. The roof of the hogan consisted merely of the support beams. *Id.* at 57.

Defendants offer in rebuttal the testimony of Phyllis Mose, owner-occupier of the challenged structure. Miss Mose testified that her hogan was built in November of 1976, prior to the February 10, 1977, proscription against construction. (R.T. December 2, 1981, at pages 149–164). She then had the roof and the dilapidated walls repaired. *Id.* at 150, 152–153. The foundation for Miss Mose's hogan was unaffected by the construction. (R.T. December 2, 1981, at page 151).

Upon reviewing this testimony and the exhibits, the Court finds that the structure identified as belonging to Phyllis Mose and shown in Exhibit 75 was constructed after February 10, 1977 but prior to September 14, 1979. The Court finds further that such structure constitutes "new construction".

10. *Structure 76: Unknown Individual's Frame House*

Plaintiff presented testimony that the frame house shown in Exhibit 76A and 76B was built without Hopi consent on Hopi partitioned lands. (R.T. December 2, 1981, at pages 57–62). The testimony also showed that the construction activity was recent. Nevertheless, the testimony did not establish that the frame house was built by members of the Navajo Tribe.

Thus, the Court finds that the Plaintiff has failed to establish a *prima facie* showing with respect to the house shown in Exhibits 76A and 76B.

### B. *The Remedy*

Based upon the foregoing discussion, the Court finds that (1) Violet Ashkey's ramada and (2) Structures 68, 69, 72, 73 and 75 are in technical violation of Paragraph 7(b), February 10, 1977, and Paragraph (a)(6), September 11, 1980, orders.

I have concluded that different considerations are appropriate for "new-new" construction which occurred after February 10, 1977, but prior to September 14, 1979—the date the Hopi motion was filed which resulted in the order of September 11, 1980—and that construction which occurred after September 14, 1979. In a sense, the doctrine of collateral estoppel is applicable as to this pre-September, 1979, construction, inasmuch as the Hopi had a fair opportunity to contest that construction in such filing. Structure 75 is the only one that clearly fits in this estoppel period.

The record suggests that Structure 69 was built in October or November, 1979, and that construction on Structures 68, 72, 73 and 75 commenced after September 14, 1979.

In view of my conclusion that a date of construction pre-September 14, 1979, is relevant, the respondents may within twenty days of the date of this order request a further hearing to submit evidence that Structures 68, 69, 72 and 73, or any of them, were constructed prior to that date. In absence of such a request and subsequent hearing, it will be ordered that these structures be removed from the Hopi reservation.

Accordingly,

IT IS ORDERED that Defendants Peter MacDonald and the Navajo Tribe are in contempt of this Court as a result of their violations of Paragraph 7(b), of the February 10, 1977, and Paragraph (a), of the September 11, 1980, order, with respect to Findings of Fact Nos. 9, 10, 12, 23, 24, and 28, as set forth in the September 11, 1980, order.

IT IS FURTHER ORDERED that as a result of such conduct, the Defendants Peter MacDonald and the Navajo Tribe shall, on or before May 31, 1982:

1. Cause the structures identified in Findings of Fact Nos. 9, 10, 12, 23, 24, and 28, in the September 11, 1980, order to be disassembled and removed to a location outside the Hopi partitioned lands.

2. Take appropriate steps to insure the restoration of the Hopi land to its original state prior to such construction.

3. Cease and desist from providing construction assistance in any form, i.e., labor or materials, to Navajos residing on Hopi partitioned lands without first ascertaining whether the requesting individual has obtained the necessary prior written Hopi consent.

IT IS FURTHER ORDERED that the Defendants shall pay a $500.00 fine for every day after April 16, 1982, that any of the specified structures remain in any form on Hopi partitioned lands.

IT IS FURTHER ORDERED that Defendants may within twenty (20) days of the date of this order request a further hearing as to the construction dates of Structures 68, 69, 72 and 73.

IT IS FURTHER ORDERED that the Defendants Peter MacDonald and the Navajo Tribe on behalf of the members of the Navajo Tribe, shall, on or before May 31, 1982, or such other date as may be determined if a further evidentiary hearing is held as to date of construction, cause the structures identified as (a) Mrs. Violet Ashkey's ramada and (b) Structures 68, 69, 72 and 73, as set forth in Plaintiff's Amended Motion For Contempt Order, filed November 23, 1981, and found to be "new con-

struction", to be disassembled and removed from their present location to a place outside the Hopi partitioned area.

IT IS FURTHER ORDERED the Defendants shall take appropriate steps to insure the restoration of the Hopi land to its original state prior to the illegal construction.

IT IS FURTHER ORDERED that a status hearing is set for Monday, April 26, 1982, at 11:00 a. m. in Courtroom No. 6, United States Courthouse and Federal Building, Phoenix, Arizona, for purposes of discussing the status of the Defendants' compliance with this order.

IT IS FURTHER ORDERED that Plaintiff may file and serve upon Defendants a verified statement of costs and request for reasonable attorneys' fees. Responses shall be filed in accordance with Rule 11, Local Rules of Practice. An evidentiary hearing shall be noticed by the Court, if necessary.