UNITED STATES of America and Craig Margain, Revenue Officer Internal Revenue Service, Petitioners,

v.

Eric J. BECKMAN, Respondent.

No. 81–1253–Civ–J–B.

United States District Court, M. D. Florida, Jacksonville Division.

Sept. 1, 1982.

Randall M. Roden, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

Scott McLarty, Decatur, Ga., for respondent.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

The Court has for consideration whether to hold respondent in civil contempt for his failure to comply with the Court's Order Granting Enforcement of Internal Revenue Summons, entered herein on April 19, 1982. The Court will begin its analysis by reviewing the enforcement proceedings which serve as the basis for this contempt question.

### I. HISTORY

On January 19, 1982, the Court entered an Order to Show Cause directing respondent to demonstrate why the civil summons issued to him should not be enforced. Respondent, appearing *pro se*, replied by asserting a fifth amendment claim. The Court, on April 16, 1982, held a hearing to determine whether petitioners' request that the Court enforce the summons should be granted. At the hearing, the Court asked respondent to indicate which of the documents requested by the summons were in his possession. The Court also offered to conduct an *in camera* inspection of the requested documents in respondent's possession in order to determine whether the documents could properly be compelled. In response to each inquiry and suggestion made by the Court, respondent refused to answer, relying on the fifth amendment's protection from self-incrimination. The Court then concluded that the documents were not protected by the fifth amendment and could properly be compelled.

In reaching this conclusion, the Court analyzed the question in light of the two basic modes of analysis provided by the Supreme Court. The first, described in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), deals with whether the act of producing documents involves the compulsion of testimony within the protection of the fifth amendment. The second form of analysis, enunciated in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29

L.Ed. 746 (1886), is grounded upon the notion that one should have privacy with respect to his personal papers. As these diverse forms of analysis have been construed to be supplementary rather than mutually exclusive, *United States v. Davis*, 636 F.2d 1028, 1042 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), the Court examined respondent's claim in terms of each.

As noted, the *Fisher* analysis looks to the act of producing documents. The act of producing documents: (1) acknowledges the existence of the documents; (2) acknowledges the taxpayer's possession and control of the documents; and (3) indicates the taxpayer's belief that the documents are the ones described in the subpoena. *United States v. Miller*, 660 F.2d 563, 566 (5th Cir. 1981). In *Fisher*, the Supreme Court found that the act of producing the documents requested in that case did not amount to the compulsion of testimony necessary to implicate fifth amendment protections. However, as *Fisher* is not entirely factually on point with the present case, and since *Fisher* expressly left open the question whether the fifth amendment would shield a taxpayer from producing his own tax records in his possession, further inquiry was necessary.

The *Fisher* court was not called upon to determine whether the implicit admission by the taxpayer of the first two aspects of producing documents would rise to the level of compelled incriminating testimony within the protection of the fifth amendment. There the court concluded that the existence and location of the documents was a "foregone conclusion." *Fisher v. United States*, 425 U.S. at 411, 96 S.Ct. at 1581. Here, however, the Court was forced to confront the issue. Respondent continuously refused to reveal which documents, if any, actually existed. Thus, the Court had to determine whether a summons which tacitly causes respondent to answer these questions improperly compels incriminating testimony protected by the fifth amendment. In considering the question in the abstract, *Fisher* noted that:

The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for the purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581. The court then continued by indicating that in the case it had for consideration, it was "doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment." *Id.* at 411, 96 S.Ct. at 1581.

Although respondent, in the case before this Court, was asked to admit the existence and possession of his own tax records, the Court nonetheless found that such an admission is not protected by the fifth amendment. As stated in *United States v. MacKey*, 647 F.2d 898, 900 (9th Cir. 1981), "[t]he compelled production of a physical object, such as a document, does not implicate the Fifth Amendment unless it is the act of production itself which is to be used as incriminating evidence." Here, there was no indication that the act of producing the requested documents is to be used as the incriminating evidence. The summoned documents are ordinary records which many taxpayers retain for tax computation purposes. The act of admitting to the existence and possession of these ordinary records does not rise to the level of "incrimination" necessary to invoke the Fifth Amendment.

Additional support for this result can be found. In *Matter of Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 477 (3d Cir. 1979), the court considered the question of whether the act of producing subpoenaed documents has communicative aspects which rise to the level of incriminating testimony within the meaning of the fifth amendment. The court, in evaluating the fifth amendment claim of Markowitz, the person to whom the summons was directed, stated:

Nevertheless, Markowitz has made no attempt to demonstrate that such tacit incriminating admissions would arise in this case. While the proponent of a fifth amendment privilege is required "to move forward only to the limited extent requisite" to show that the privilege is properly claimed, he must make some showing. The fact that Markowitz, in his capacity as attorney for certain clients would hold documents of the type involved here is unremarkable. The acknowledgement that such documents exist, are possessed or controlled by Markowitz and are believed by Markowitz to be the documents described by the subpoena, does not rise, under the circumstances shown in this record, to the level of testimony within the protection of the Fifth Amendment. [citations omitted] Here, as in the case described above, respondent made no showing at the enforcement hearing to indicate that the privilege should apply, nor was there any indication that respondent's possession of the ordinary tax records would be anything but unremarkable.

The Supreme Court, in *Fisher*, indicated that whether these tacit admissions should properly be the subject of fifth amendment protection depends on the circumstances of each case. The Court, in ordering the enforcement of the instant summons, was cognizant of instances where the tacit admissions associated with producing documents would constitute compelled incriminating testimony. *See In re Antitrust Grand Jury Investigation*, 500 F.Supp. 68 (E.D.Va.1980) (summons required witness to separate "bona fide" documents from others, thereby testifying as to which were not "bona fide.") However, the circumstances presented by this case at the enforcement hearing gave the Court no reason to find that by being compelled to indicate which documents he possessed, respondent was forced to furnish incriminating testimony.

Having concluded that causing respondent to acknowledge the existence and possession of the summoned documents did not implicate the fifth amendment, the Court next considered whether respondent's belief that the documents he identifies are the ones summoned amounts to a compulsion of incriminating testimony. The perceived danger here is that by turning over certain documents, respondent will have authenticated them for future use. As noted in *In re Grand Jury Subpoena*, 646 F.2d 963, 968 (5th Cir. 1981), this "implicit authentication" rationale has been the prevailing justification for the fifth amendment's application to documentary summonses. However, the Fifth Circuit has recognized this problem and has stated that "it should not be a ground for refusing to produce the documents as long as the fact of compliance with the summons is not introduced into evidence at the incriminated party's trial." *United States v. Davis*, 636 F.2d at 1041. Thus, having analyzed the three distinct testimonial communications which result from the act of producing documents, the Court concluded that the act of producing the documents summoned did not, under the circumstances of the instant case, impinge upon respondent's fifth amendment protections.

Though the Court found the act of producing the documents not protected by the fifth amendment, the Court also considered the nature of the documents themselves before it concluded that the summons should be enforced. As noted above, this form of analysis was introduced in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1881). The central teaching of *Boyd* is that the seizure of one's private books and papers to be used in evidence against one is not substantially different from compelling one to be a witness against oneself. *Id.* at 633, 6 S.Ct. at 533. Although several aspects of *Boyd* have been overruled, this core perception remains. The Fifth Circuit, after analyzing *Boyd* and the numerous decisions thereafter, has expressed what it considers to be the cumulative rule in this area. In *United States v. Davis*, 636 F.2d at 1043, the court held that:

[A]ny incriminating papers in the actual or constructive possession of an individual, which he holds in his individual capacity, rather than in a representative capaci-

ty, and which he himself wrote or which were written under his immediate supervision, are absolutely protected by the *Boyd* principle from production, regardless of whether they are business-related or more inherently personal in content.

The Court, at the hearing held on April 16, 1982, offered to conduct an *in camera* examination of the summoned documents in order to perform the test set forth above in *Davis.* Respondent declined to permit the Court to make the inspection. Therefore, the Court conducted the *Davis* test by using the description of the documents found in the summons and concluded that none of the documents appeared to be privileged. Accordingly, the Court ordered that the summons in question be enforced and that respondent turn over to petitioner all requested information within his possession.

## II. CONTEMPT PROCEEDINGS

After the entry of the enforcement order, respondent appeared before certain revenue agents, but did not produce any documents. On May 25, 1982, petitioners moved for an order to show cause why respondent should not be held in contempt for his failure to comply with the Court's order. On May 26, 1982, the Court issued an order to show cause and set the matter for hearing. Respondent then sought the assistance of counsel. On June 7, 1982, one day before the scheduled hearing, respondent's attorney moved for a continuance of the hearing. The Court granted the motion and reset the hearing for June 22, 1982.

At the June 22, 1982, hearing, respondent's attorney, after making his legal arguments, sought to present evidence. Although no witnesses had been subpoenaed and the Court had not been notified that an evidentiary hearing was anticipated, the Court permitted respondent to present testimony. Mr. McLarty, respondent's attorney, first called Agent Margain to testify. This attempt proved unsuccessful as Mr. McLarty had failed to subpoena Agent Mar-

gain and Agent Margain was not present at the hearing.

Subsequently, both respondent and his wife testified in their own behalf. The essence of their testimony was that they did not have any of the summoned documents in their control or possession. Thus, according to the testimony, respondent was unable to comply with the summons by producing any of the documents. On cross-examination, respondent and his wife repeatedly reiterated the statement that the documents were not within their control or possession. Both respondent and his wife asserted a fifth amendment claim to various questions concerning the present location of the documents, whether the documents ever existed, and whether respondent or his wife had control or possession of the documents at the time the summons was served. At the conclusion of the testimony, Mr. McLarty argued that respondent cannot properly be held in civil contempt of court for his failure to produce the summoned records since he is presently unable to comply with the order requiring him to produce those records. That argument remains as respondent's principal defense to the motion for contempt.

## III. ANALYSIS

The focus of the Court's inquiry must be guided by Eleventh Circuit precedent.[1] The two principal cases are *United States v. Meeks,* 642 F.2d 733 (5th Cir. 1981) and *United States v. Hankins,* 565 F.2d 1344 (5th Cir.), *clarified,* 581 F.2d 431 (5th Cir. 1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979). In *Hankins,* respondent turned over certain documents, but the government contended that some requested documents had not been released and that other documents had had pages excised. At the contempt hearing, the government met respondent's claim of inability to comply by introducing evidence that pages had in fact been excised and that other requested documents actually ex-

1. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit, decided prior to October 1, 1982.

isted. Respondent attempted to testify on the condition that there would be no cross-examination. The district court refused this conditional testimony and respondent made an offer of proof to the effect that he did not have the missing records. Respondent having put forth no evidence of his inability to comply, the district court held him in contempt.

On appeal, the Fifth Circuit affirmed the district court's order of contempt, finding that the government had met its burden of putting forth a prima facie showing of non-compliance by respondent and that respondent had failed to overcome the government's showing because he did not present any evidence. The court paid no heed to respondent's offer of proof, stating that respondent's "failure to testify, presumably resting on his Fifth Amendment right not to testify, means that he had failed to show cause why he should not be held in contempt of an outstanding order." *United States v. Hankins*, 581 F.2d at 437.

In *Meeks* the Fifth Circuit distinguished *Hankins* and came to the opposite result. In *Meeks*, respondent turned over some of the records and then, at the contempt hearing, submitted a declaration indicating that he had provided the IRS with all summoned documents which he had in his possession. Respondent refused to testify concerning the whereabouts of the documents, relying on the fifth amendment. The district court refused to accept the declaration and found respondent in contempt, indicating that respondent could purge himself of the contempt by either producing the documents or explaining why he could not produce the documents. As indicated, the Fifth Circuit vacated the contempt order on appeal.

The *Meeks* court distinguished *Hankins* on three facts. First, the court pointed out that Hankins claimed the privilege against self-incrimination on the erroneous ground that a person could claim the privilege against the production of the papers of a business entity. The court noted that there was no indication that Hankins claimed a fifth amendment privilege against a governmental inquiry of what he personally

might have done with the documents to make them unavailable. Meeks, however, did claim the privilege with respect to an inquiry concerning his personal role relating to the unavailability of the documents.

The second distinction drawn between *Hankins* and *Meeks* involved the proof available to demonstrate that the records were unavailable. Hankins had offered no proof to demonstrate that he could not produce the documents. However, in *Meeks* there was evidence that Meeks did not have the documents at the time he was ordered to comply with the summons. That evidence came from an IRS agent's testimony and from Meeks' declaration.

Finally, the court in *Meeks* noted that in its case, contrary to *Hankins*, there was no specific finding by the trial court before the claim of privilege that at the time of the contempt hearing he could produce the documents. Given these distinctions from *Hankins*, the court in *Meeks* vacated the contempt order.

In applying the principles of *Hankins* and *Meeks* to the instant case, the Court finds that an order of contempt based upon respondent's failure to produce the summoned documents would be inappropriate. The factors which caused the Fifth Circuit to distinguish *Meeks* from *Hankins* are also present in this case. Here, as in *Meeks*, respondent has made a specific assertion that a governmental inquiry concerning what he might personally have done with the documents would tend to incriminate him. Respondent further argues that his failure to keep certain of the requested documents amounts to a criminal violation in itself. It appears to the Court that respondent has invoked a proper fifth amendment privilege; i.e., that his explanation concerning his personal role relating to the unavailability of the documents would tend to incriminate him. *See Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).

The remainder of the distinguishing facts are also found in the case before the Court. Proof was presented in the form of testimony from respondent and his wife which

indicated that respondent could not produce the documents because they were not within his control or possession. It has been held that a respondent's testimony that he is unable to comply with the summons is sufficient to satisfy his burden of production. *See United States v. Rylander*, 656 F.2d 1313, 1319 (9th Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 2006, 72 L.Ed.2d 464 (1982). Finally, here again as in *Meeks*, the Court has been unable to find, as a matter of fact, that respondent ever had the ability to produce the requested documents. Therefore, the Court finds that the facts presented by the instant case are more similar to *Meeks* than to *Hankins*, and that the result obtained in *Meeks* should also be reached here.

Further justification exists for finding that *Meeks* should control. *Meeks* explained its reasoning in vacating the contempt order thusly:

> The position of the government in this case pushes Meeks into an untenable position. If he does not explain what happened to the records, he must remain in prison. The only key to his release is his explanation. This is the thrust of the civil contempt order. The only way he can be released from prison would be for him to yield his constitutional privilege against self-incrimination.
>
> Stated in terms of the common explanation of civil contempt, the person who is in custody must have the "key to the jail" in his pocket. He must be free to release himself from confinement by complying with the order of the Court. But the only way that Meeks can comply with the order of the Court in this case is to sacrifice a personal constitutional right. The civil contempt order forces Meeks to remain in jail until he testifies against himself as to matters which might tend to incriminate. This is in direct and specific contravention of the fifth amendment privilege.

*Meeks*, 642 F.2d at 736. Here, respondent is placed in the same position in which Meeks found himself. The government, as in *Meeks*, contends that respondent can purge himself of contempt only by producing the documents or by explaining why he is unable to produce them. Respondent has stated under oath that he is unable to produce the documents, thereby, according to the government's position, leaving his explanation of his inability to produce as the only method of purging the contempt. Thus, in the government's view, respondent's only "key to the jail" is in giving a potentially self-incriminating explanation of why he cannot produce the documents. *Meeks* specifically considered such a situation, found it "untenable," and held that the order of contempt must be vacated. The Court, under the facts of this case, is bound by that decision.

The government offers an additional argument. It avers that since the IRS summons imposed a duty upon respondent to retain possession of summoned documents pending a judicial determination of the enforceability of the summons, and since self-induced inability to comply is not a defense to a contempt proceeding, *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980), respondent must demonstrate that he did not have the requested documents at the time the summons was served. This argument fails in light of *Meeks*. By this argument the government is again demanding that respondent explain the whereabouts of the requested documents in order to purge himself of contempt. Moreover, by compelling respondent to disclose whether he unlawfully disposed of the documents after the summons had been served, the Court would be requiring respondent to reveal whether he had obstructed justice, exposing respondent to further criminal charges. Clearly, such a compelled disclosure is protected by the fifth amendment. Accordingly, pursuant to *Meeks*, the Court finds that respondent is not in contempt for his failure to produce documents pursuant to the Court's order of April 19, 1982.

The Court must make one further observation. Here, unlike either *Meeks* or *Hankins*, respondent presented evidence of his inability to comply with the Court's order enforcing the summons by taking the witness stand and testifying to that effect.

His sworn testimony was sufficient to establish his inability to comply with the order, thereby providing him with justification for his lack of compliance. *See United States v. Rylander*, 656 F.2d at 1319. Therefore, the Court finds that respondent is not in contempt for his failure to comply with the order enforcing the IRS summons. However, the Court makes no ruling concerning the effect of respondent's failure to submit to a full cross-examination once he had elected to take the witness stand since the instant petition for contempt does not bring that question before the Court and, consequently, since respondent has not been afforded an opportunity to offer a response. Thus, the Court will consider the effect of respondent's having testified only if that issue is properly presented to the Court and respondent is allowed to respond.

### IV.  SUMMARY

In sum, *Meeks* indicates that where (1) respondent has properly invoked the fifth amendment privilege against a governmental inquiry concerning the whereabouts of the summoned records; (2) there is proof that respondent is unable to comply with the order enforcing the IRS summons; and (3) the Court was unable, at a time prior to the contempt hearing, to find that respondent ever had the ability to comply with the order, the Court must not hold respondent in civil contempt because his only "key to the jail" would cause him to sacrifice a constitutionally protected right.  As these considerations are present in the instant case, the Court will not hold respondent in civil contempt.

Accordingly, it is

ORDERED that the government's petition to hold respondent in civil contempt of court for his failure to comply with the Court's Order Granting Enforcement of Internal Revenue Summons is denied.